**432**

John DEVORE & Vinnie
Devore, Plaintiffs,

v.

FEDERAL SAVINGS BANK OF
DOVER, NEW HAMPSHIRE,
Defendant,

and

Chrysler First Financial Services
Corporation, Party-in-Interest
in the Counterclaim.

Civ. No. 92–383–P–C.

United States District Court,
D. Maine.

April 7, 1993.

Vinnie Devore, pro se.

John W. Devore, pro se.

Edward MacColl, Thompson, McNaboe, Ashley & Bull, Portland, ME, for defendant.

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTIONS TO DISMISS, TO STRIKE AND FOR SUMMARY JUDGMENT, AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE COUNTERCLAIM

GENE CARTER, Chief Judge.

Plaintiffs entered into an "Open–End Credit Plan" with Defendant bank, under which they borrowed $80,000. They also gave Defendant a mortgage on their home. Acting *pro se* [1] and citing Isaiah as well as innumerable state and federal statutes, Plaintiffs brought a complaint alleging "fraudulent conveyance" on the theory that the Federal Reserve Notes they received in return for the mortgage are of no value "as the currency has been declared to be unredeemable." (Docket No. 1). Defendant filed a motion to dismiss as well as a counterclaim for foreclosure of the mortgage under 14 M.R.S.A. § 6322. (Docket No. 4). By order dated January 20, 1993, this Court dismissed the complaint for failure to state a claim. (Docket No. 12). Plaintiffs' motion for summary judgment on the complaint was stricken as moot by endorsement of March 3, 1993. (Docket No. 10).

Plaintiffs filed a supplemental motion for summary judgment on the counterclaim for foreclosure (Docket No. 25), which was denied by the Court for Plaintiffs' failure to comply with Local Rule 19. (Docket No. 28). Now before the Court are Plaintiffs' Motion

---

**1.** In their motion to dismiss, Plaintiffs urge the Court to recognize that they are not acting *pro se,* but rather as sovereign Americans.

to Dismiss the bank's objection to Plaintiffs' summary judgment motion (Docket No. 29), Plaintiffs' Renewed Motion for Summary Judgment on the Counterclaim (Docket No. 36), and Plaintiffs' Motions to Strike Defendant's Motion for Summary Judgment (Docket Nos. 39 and 44).

### Motion to Dismiss

Plaintiffs' motion to dismiss Defendant's objection to their first summary judgment motion was filed on March 5, 1993, two days after this Court entered its order denying Plaintiffs' motion for summary judgment. Plaintiffs' motion to dismiss the objection is, therefore, moot.

### Plaintiffs' Motion for Summary Judgment

Under Federal Rule of Procedure 56(c), summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Court of Appeals for the First Circuit has recently stated:

> When, as here, the movant-defendant has suggested that competent evidence to prove the case is lacking, the burden devolves upon the nonmovant-plaintiff to "document some factual disagreement sufficient to deflect brevis disposition." ...
>
> This burden is discharged only if the cited disagreement relates to a genuine issue of material fact.... "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." ... This requirement has sharp teeth: the plaintiff "must present definite, competent evidence to rebut the motion." ...

*Wynne v. Tufts University School of Medicine,* 976 F.2d 791, 793 (1st Cir.1992) (citations omitted).

The following undisputed facts are shown in the record. On June 29, 1988, Plaintiffs John W. DeVore and Vinnie E. DeVore, executed an "Open–End Credit Plan" in the amount of $80,000 in which they are named as the borrowers with an $80,000 line of credit and Defendant is named as the lender. In the loan document, in addition to agreeing to pay back loans advanced under it and finance charges, Plaintiffs agreed to pay costs and reasonable attorney's fees incurred by the bank in legal proceedings to enforce the debt. The Credit Plan document recites that it is secured by a security interest "by way of a separate security agreement, mortgage or other instrument dated June 29, 1988" on property at 20 Clark's Lane, South Berwick, Maine.

On June 29, 1988, Plaintiffs also executed a mortgage for property at 20 Clark's Lane, South Berwick, Maine. The mortgage stated that it was to secure the repayment of indebtedness evidenced by "the Note," which was defined in the previous paragraph as "the Equity Credit Note and Loan Agreement of near or even date herewith between Borrower and Lender."

In their memorandum Plaintiffs reiterate arguments made previously that they never received "money of value" from the bank. Those arguments were rejected by the Court in granting Defendant's motion to dismiss. Plaintiffs also argue that Defendant has no evidence of a valid claim because the mortgage was granted to secure indebtedness evidenced by a "note" but no note exists. Plaintiffs rely on Defendant's Objection and Memorandum to Plaintiffs' So–Called Motion to Dismiss (Docket No. 28) at 2, in which Defendant's attorney states that "when the plaintiffs appeared and asked to see the original note signed by them, the Bank did show the defendants, and give them a copy of, the original Open–End Credit Plan. No separate note ... exists."

The mortgage defines the note of which it speaks as "the Equity Credit Note and Loan Agreement of near or even date herewith between Borrower and Lender, which Note provides for the monthly payment of interest at a variable interest rate." The Open–End Credit Plan, while not formally entitled "Note" is plainly a credit and loan agreement signed on the same date as the mortgage,

providing for the monthly payment by Plaintiffs of interest at a variable interest rate. The Open–End Credit Plan provides that a mortgage on property located at 20 Clark's Lane, South Berwick, dated June 29, 1988, secures the payment of Plaintiffs' debt under the agreement. The mortgage, therefore, plainly references the Open–End Credit Plan as the debt instrument, or "Note" secured by the mortgage. *See Bank of Maine, N.A. v. Weisberger,* 477 A.2d 741, 744 (Me.1984) (looking at reasonable interpretation of the language of a mortgage).

If there is any ambiguity, it is plain from the bank's "admission," cited by Plaintiff, that the Bank intended the Plan to be the Note referenced in the mortgage. There is nothing in the record to suggest that another debt instrument secured by the Plaintiffs' mortgage exists or that Plaintiffs intended any other instrument as the Note when they executed the mortgage. Plaintiffs have not cited any authority for their argument that a loan instrument secured by a mortgage must be titled exactly as it is referred to in the mortgage. On the record. before it, the Court cannot find that Plaintiffs are entitled to judgment as a matter of law on Defendant's counterclaim.

### Motions to Strike

On March 15, 1993, Plaintiffs filed a motion to strike Defendant's Motion for Summary Judgment, based on Defendant's alleged failure to serve the motion upon Plaintiffs pursuant to Rule 5 of the Federal Rules of Civil Procedure. Plaintiffs argue that they only received notice of Defendant's motion on

page 2 of this Court's order of March 3, 1993. The language cited by Plaintiffs as notifying them of Defendant's motion for summary judgment does not refer to proceedings in this case, but is contained in a parenthetical describing the ruling in a different case, *Fournier v. Joyce,* 753 F.Supp. 989 (D.Me. 1990).

Defendant did not file its motion for summary judgment until March 9, 1993, obviously after the Court's order of March 3. Plaintiffs' motion to strike, while filed March 15, is dated March 6, 1993, also before Defendant's motion for summary judgment was filed. There is no basis for Plaintiffs' first motion to strike because it clearly does not refer to an existing motion for summary judgment.

On April 1, 1993, Plaintiffs filed a second motion to strike Defendant's motion for summary judgment. This motion refers to a telephone call to the Clerk's Office on March 19 in which Plaintiffs were told that Defendant had filed a summary judgment motion. Plaintiffs claim that they did not receive notice of Defendant's motion. Defendant's motion, however, was filed along with a certificate of service, stating that service was accomplished by sending the motion and supporting documents to Plaintiffs by U.S. mail on March 9, 1993.

■ Plaintiffs again seem confused and concerned[2] about a motion for summary judgment by Defendant which they think was ruled on by the Court's order of March 3, for they again state that the only notice of the motion they received was in that order. In certain instances a certificate of service may

---

**2.** From their motion, it is clear that Plaintiffs are still confused by the Court's parenthetical explanation of the *Fournier* case and that they mistakenly think from the Court's reference to that case that it has treated them as having waived objection to a summary judgment motion filed by Defendant. Plaintiffs state:

> 2. Will the court please explain to these plaintiffs the statute or law by which the court may elect to enter a waiver of rights in behalf of a party in relation to a matter that has not been entered before the court and has never been served upon the opposing party.
>
> 3. Will the HONORABLE judge please explain to these Plaintiffs by what mechanism the HONORABLE AND IMPARTIAL judge came to know of a Motion that WOULD BE EN-

TERED BY THE DEFENDANT several days BEFORE IT WAS ENTERED, and not only that a motion would be entered, but the nature of the motion and the fact that the opposing party would FAIL TO RESPOND to it?

The Court did not have before it any motion for summary judgment of Defendant when it ruled on March 3 on *Plaintiffs'* motion for summary judgment. It referred to the *Fournier* case merely to explain the operation of this District's Local Rules as they pertain to *pro se* litigants. The parenthetical explaining *Fournier* did not relate to a summary judgment motion in this case. The Court did not know that Defendant would be filing a motion for summary judgment and has not yet ruled on Defendant's motion for summary judgment.

give rise to a presumption that the party served has received notice. *See* 4A C. Wright & A. Miller § 1150. To make certain, however, that these *pro se* Plaintiffs have indeed had an opportunity to respond to Defendant's now-pending motion for summary judgment, the Court will order that they be served again and that they respond within the time frame set by Local Rule 19(c). The Court will then rule on the motion. Since Plaintiffs will have adequate opportunity to respond to the summary judgment, the motion to strike must be denied.

Accordingly, it is *ORDERED* that Plaintiffs' Motion to Dismiss Defendant's Objection be, and it is hereby, STRICKEN as MOOT. It is further ORDERED that Plaintiffs' Motion for Summary Judgment on the Counterclaim be, and it is hereby, DENIED. Finally, it is ORDERED that Plaintiffs' Motions to Strike Defendant's Motion for Summary Judgment be, and they are hereby, DENIED.

Defendant is hereby ORDERED to serve its motion for summary judgment and supporting documents on Plaintiffs by Thursday, April 15, 1993, by sending it via United States registered mail to the last address known to defense counsel or the last address known to the Clerk of this Court. The response time prescribed by Local Rule 19 will begin to run on that date.

SO ORDERED.